UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

UNITED STATES OF AMERICA

        -against-               22 CR 337-02 (KMK)

SHON MORGAN,

               Defendant.
------------------------------------------------------------------ X


## <u>SENTENCING MEMORANDUM OF SHON MORGAN</u>


Francis L. O'Reilly, Esq.
1735 Post Road, Suite 2C
Fairfield, CT 06824
Tell. 203-913-4608
Attflor@aol.com

*Attorney for Defendant Shon Morgan*

## I.    PRELIMINARY STATEMENT

Shon Morgan respectfully submits this memorandum in advance of his sentencing. Shon submits that when the Court considers all of the relevant facts, including his lack of criminal history and post-arrest rehabilitation, it should impose a below Guidelines sentence of 36 months of incarceration.

Shon fully accepts responsibility for his conduct. After his arrest, he made significant efforts at post offense rehabilitation by completing an out- patient drug treatment program as well as two full semesters of college.  These efforts at post offense rehabilitation demonstrate that Shon is determined to better his life even with the knowledge that he was facing a significant period of incarceration.  Also, keep in mind that this is Shon's first ever arrest and conviction and he was 19 years old at the time of the offense.  It is submitted that his participation in the instant offense is not consistent with his character.

Shon Morgan respectfully requests that the Court impose a sentence that incorporates the maximum amount of leniency possible – only then will the result be "sufficient but not greater than necessary," to meet all of the sentencing goals embodied in 18 U.S.C. § 3553(a).

## II.    BACKGROUND

### A.    Shon Morgan's Personal History

Shon Morgan was 19 years old at the time of the offense conduct. As is often the case with otherwise law-abiding individuals who find themselves in trouble, Shon's participation in the instant offense stems from his associating with the wrong individuals.

Shon was born in Hawaii and raised by his mother and maternal grandparents. His parents separated when he was a young child. Shon's grandfather had a long career in the U.S. Army and the family resided on several military bases in Hawaii during Shon's childhood. There

were periods of times when Shon's grandfather was on a tour of duty and away from the family for up to one year at a time.

In 2011, Shon's grandfather got a job as a civilian contractor with the Air Force in Virginia. Shon, his mother and two sisters relocated to Virginia as well. Shon's father remained in Hawaii. Shon's mother later remarried, but Shon never really got along with his stepfather. Shon began spending time with bad influences. He started smoking marijuana at the age of 13 and neglected his schoolwork. He did not graduate high school with the rest of his class but did eventually obtain a high school equivalency degree.  Shon's future plans include continuing to attend college and obtaining a degree in biology. He would like to eventually apply to medical school and hopes one day to become a doctor.

### B.    Post-Arrest Rehabilitation

From his release from jail on June 29, 2022 until his plea on June 26, 2023, Shon was out on bond. During this time period, Shon has demonstrated a true commitment to remaining drug free. As discussed above, Shon began smoking marijuana at the age of 13, and beginning when he was 18, he smoked daily. See PSR at ¶ 68. While he tested positive for marijuana twice during the very early days of his release (June 29 and July 18, 2022), he subsequently tested negative for all illicit substances 19 times between August 16, 2002 and May 1, 2023. See id. at ¶ 7. Shon had one additional positive test, shortly before he entered his guilty plea and was remanded to jail. See id. While on pre-trial release, Shon successfully completed outpatient substance abuse treatment at Envision Counseling in Annadale, Virginia, in October 2022. See id.

Also while on pre-trial release, Shon was enrolled at Northern Virginia Community College in Manassas, Virginia from August 22, 2022 through May 8, 2023. See id. at ¶ 72. He

2

successfully completed two semesters of college and upon his release from prison, Shon plans to return to school and earn his associate degree in biology, with the hope of attending medical school. See id. at ¶ 74.

### C.    The Sentencing Guidelines

Shon pleaded guilty, without a plea agreement, to one count of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. Section 1951.

The defendant objects to the Guidelines calculation in the PSR and government's Pimentel letter. First, Mr. Morgan objects to the five point enhancement pursuant to U.S.S.G. § 2B3.1(b)(2)(C) "because a firearm was brandished or possessed." See PSR at ¶¶ 5(d), 32. Mr. Morgan's objection is twofold. First, while the PSR alleges that co-defendant Pineda was in possession of "a real firearm at the time of the attempted robbery," id. at ¶ 21, there is no evidence that Shon was aware that Pineda had a real firearm. There is no evidence that prior to the attempted robbery, Pineda discussed with Shon that he intended to carry a real gun. Nor is there any evidence that at the time of the offense, Shon learned that Pineda was in possession of a real firearm. Furthermore, there is no evidence that it was "reasonably foreseeable" to Shon that Pineda would possess a real firearm. There is no evidence that during the planning, Pineda discussed with Shon or the other co-conspirators that he would have a real weapon on him. There is also no evidence that Shon had any knowledge of Pineda's prior use or possession of a gun. Accordingly, the defendant objects to a five point enhancement because "a firearm was brandished or possessed."

Second, as made clear in the PSR, the full scope of Shon's knowledge of any "weapon" that would be possibly used during the offense conduct is "an imitation firearm." PSR at ¶ 17. In the government's sentencing submission for co-defendant Pineda, in discussing the imitation

3

firearm, the government states "a pellet gun" was found. <u>See</u> ECF #32 at p. 3. A "pellet gun" is not a "firearm." <u>See</u> Application Note 1(H) to U.S.S.G. § 1B1.1 ("A weapon, commonly known as a "BB" or pellet gun, that uses air or carbon dioxide pressure to expel a projectile is a dangerous weapon but not a firearm.").

Accordingly, Mr. Morgan submits that the applicable Guidelines in this case are as follows:

| | |
|---|---|
| Base Offense Level, U.S.S.G. § 2B3.1(a) | 20 |
| Specific Offense Characteristic, a dangerous weapon was possessed, U.S.S.G. § 2B3.1(b)(2)(A)(E) | +3 |
| Specific Offense Characteristic, Intended Loss[1] of more than $9.5 million | +7 |
| Acceptance of responsibility, U.S.S.G. §§ 3E1.1(a), (b) | -3 |
| Total offense level | 27 |

Shon has zero criminal history points, and thus, a Criminal History Category of I. Accordingly, the applicable advisory Guidelines range is 70 - 87 months.

## III.   ARGUMENT

### A.   The Applicable Legal Standard

As the Court is aware, the Sentencing Guidelines are only advisory in determining Shon Morgan's sentence. <u>See</u> <u>United States v. Booker</u>, 543 U.S. 220, 245-46 (2005). While the Guidelines should be given fair consideration, the Supreme Court has repeatedly emphasized that they are not mandatory and are "not to be *presumed* reasonable." <u>Nelson v. United States</u>, 555 U.S. 350, 352 (2009) (emphasis in original); <u>see</u> <u>also</u> <u>United States v. Cavera</u>, 550 F.3d 180, 189 (2d Cir. 2008) (<u>en</u> <u>banc</u>) (emphasizing that the Guidelines are "truly advisory"). The court should

---

[1] Mr. Morgan's objections to the loss calculation as discussed below.

instead impose a sentence that is "sufficient, but not greater than necessary" to punish in proportion to the seriousness of the offense, deter, protect the public and provide educational, vocational, or other correctional treatment when needed. 18 U.S.C. § 3553(a); see United States v. Stewart, 590 F.3d 93, n.30 (2d Cir. 2009). Ultimately, the court "must make an individualized assessment of the sentence warranted by Section 3553(a) based on the facts presented," United States v. Jones, 531 F.3d 163, 170 (2d Cir. 2008) (internal quotations omitted), and give no greater weight to the Guidelines calculation than any of the other factors, see United States v. Kimbrough, 552 U.S.  85, 101 (2007).

Under § 3553(a), courts must consider various factors in assessing the reasonableness and justness of a sentence. Such factors include the history and characteristics of the defendant and the nature and circumstances of the offense. Courts should also consider the need for the sentence to (a) reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2) and (6). It is thus appropriate for courts to sentence defendants below the Guidelines range when such a sentence satisfies the purposes of 18 U.S.C. § 3553(a).

### B.       Shon's Age is a Mitigating Factor

While not attempting to excuse Shon's behavior, his age of only 19 at the time of the offense conduct is a mitigating factor that the Court should consider in determining an appropriate sentence. Indeed, it is a factor acknowledged by Probation. See PSR at p. 26 ("We

5

recognize that Morgan's young age at the time of the instant offense and that his history of substance use may have continued to his instant criminal conduct.").

For healthy teenagers, research confirms that brain development continues well into a person's twenties. See, e.g., Adolescent Maturity and the Brain: The Promise and Pitfalls of Neuroscience Research in Adolescent Health Policy, Journal of Adolescent Health (2009). A 2014 study found that teenagers have an increased propensity to engage in risky behavior. See Arthur Allen, Risky Behavior by Teens Can Be Explained in Part By How Their Brains Change, The Washington Post, Sept. 1, 2014, at http://www.washingtonpost.com/national/health-science/risky-behavior-by-teens-can-be-explained-in-part-by-how-their-brains-change/2014/08/29/28405df0-27d2-11e4-8593-da634b334390_story.html (discussing study published in Developmental Science; a complete copy of the study can be found on the National Institute of Health's website: http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3869036/). The research indicates that the part of the brain associated with reasoning is constantly changing in a teenager's brain making the young person highly susceptible to making bad choices. "[W]hen adolescents are in the presence of peers, what is known as the reward circuitry in the brain is more activated than when adults are with their peers." Id. While we are not trying to excuse Shon's behavior, we do believe that the Court should consider, among other factors, that the crime for which Shon has pleaded guilty was committed when he was still a teenager.

C.       The "Loss Amount" Arbitrarily Increases the Guidelines Range

The PSR and the government's Pimentel letter calculate the intended loss as more than $9.5 million and less than $25 million. See PSR at ¶¶ 5(e), 33. While a detailed explanation is not provided, it appears the loss amount is based on the fact that around the time of the offense conduct "the media had been reporting that the victim had stolen approximately $23.8 million of

Bitcoin cryptocurrency." Id. at ¶ 16. The PSR does not provide any detail as to how many Bitcoins were the subject of the attempted theft, or what value it assigned to each Bitcoin to come up with the $23.8 million loss amount. It is respectfully submitted that in determining the appropriate sentence, the Court must view the loss figure with skepticism.

First, as the Court likely knows, the Third Circuit recently held that the loss enhancement under U.S.S.G. Section 2B1.1 is limited to "actual loss," not intended loss. United States v. Banks, 55 F.4th 246, 258 (2d Cir. 2022). While this is not binding precedent on Your Honor, it bears emphasis that there was in fact no actual loss in the instant case.

Second, the attempted theft in this case was of Bitcoin, a virtual currency. Bitcoin has historically been extremely volatile, due both to non-developed markets and investor speculation. Price fluctuations are extremely common and at times quite drastic. If the loss amount in the PSR is truly based off of some unconfirmed media report about how much the victim stole from others, that can hardly be said to be a reliable figure. Indeed, those same media reports noted that the crypto currency was stolen by the victim two years prior, in 2018.

Third, by May 2020, the victim no longer had any of the Bitcoin that he had stolen.[2] In February 2020, the victim pre-empted his arrest by offering his full cooperation with the government, and as part of that cooperation, he returned the Bitcoin, as well as any proceeds from the theft. See Alex Morris, How a Teenaged Hacker Pulled Off a $24 Million Crypto Heist,

---

[2] The victim told Rolling Stone magazine that when all was said and done, he ended up 562 bitcoins, worth close to $10 million at the time. While well beyond the scope of this submission, the victim actually stole a cryptocurrency called Triggers, which was allegedly worth close to $24 million (even that figure is highly inflated as Trigger was at its height at the time and has since crashed and been delisted from crypto exchanges). Given the large amount of crypto currency that the victim stole, and the limits crypto exchanges have on daily transactions, the victim enlisted others, whom he paid, to help launder the stolen virtual coins.

Rolling Stone, July 18, 2022, at https://www.rollingstone.com/culture/culture-features/crypto-heist-teenage-hacker-ellis-pinsky-1367400/. Of note, in 2018, the Bitcoin the victim possessed was worth around $10 million; when he returned it in February 2020, it was worth less than $2 million. See id. And while the government may argue that there is no evidence that Shon knew that the victim no longer had the stolen Bitcoin, there is little, if any evidence, that Shon and his co-conspirators had any idea how much of the stolen Bitcoin the victim still had, or how much it was worth at that time.

All of this is to say that the seven point enhancement for the intended loss amount is a dubious figure, not grounded in reality. Given the lack of certainty of this significant component of the Guidelines calculation, it is respectfully submitted that the Court should exercise its discretion and not impose a sentence in the Guidelines range calculated by the PSR.

### D.      Shon's Efforts at Post Offense Rehabilitation

Courts can take post-offense and/or potential for rehabilitation into account at sentencing. Shon respectfully urges the Court to do so here in imposing a sentence.

"[I]t is well established that a district court should consider a defendant's potential for rehabilitation in determining a sentence." United States v. Wong, 40 F.3d 1347, 1382 (2d Cir. 1994); see also United States v. Barton, 76 F.3d 499, 503 (2d Cir. 1996) ("A court may depart from the applicable guideline range in view of the defendant's efforts toward rehabilitation."). Courts in the Second Circuit have granted substantial leniency based on post-offense rehabilitation. See United States v. Blake, 89 F. Supp. 328, 339 (E.D.N.Y. 2000) (departing 21 offense levels "based upon significant pre-sentence rehabilitation and the probability of continuing steps toward permanent good behavior."). Post-offense and/or potential for rehabilitation may also "shed light on the likelihood that . . . [a defendant] will engage in future

criminal conduct, a central factor that district courts must assess when imposing sentence." Pepper v. United States, 562 U.S. at 492.

Shon has made great efforts at post offense rehabilitation. First, he took seriously his daily usage of marijuana and successfully completed outpatient treatment. He had tested negative for illicit substances 19 times while on pre-trial release. Next, Shon completed two semesters of college at Northern Virginia Community College. Both of these personal triumphs are very good indicators of post-offense rehabilitation. Shon continues to positively work on himself and is eager to demonstrate that he will never be involved with the criminal justice system again.

Courts can consider compliance with pretrial supervised release in determining whether a defendant is likely to continue post offense rehabilitation. In Pepper v. United States, 562 U.S.at 492, the Supreme Court recognized that the defendant's model compliance with probation conditions, including successful completion of a drug free treatment plan, "suggest[ed] a diminished need for . . . [further] correctional treatment." As noted, Shon has been very compliant with the conditions set by the Court.

### E.    A Sentence of 36 Months is Sufficient but Not Greater Than Necessary

Analysis of the Section 3553 factors weighs in favor of a sentence of 36 months and two years of supervised release. It is respectfully submitted that such "a sentence [is] sufficient but not greater than necessary" to provide just punishment.

While the nature and circumstances of the offense are serious, it is respectfully submitted that Shon's young age contributed to his extremely bad decision-making. The history and characteristics of Shon support the notion that the offense conduct is aberrational and not reflective of his true character. As his mother told Probation "I never would have suspected or

thought if him doing anything like that." PSR at ¶ 60. The instant offense is marked deviation from Shon's otherwise law-abiding life.

Section 3553 (a)(2)(A) provides that the Court should consider the need for the sentence it imposes "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). This section of the Code essentially asks the Court to consider the defendant and his actions holistically, and to "provide just punishment" in light of all the facts known to the Court. Id. There is no question that a sentence of 36 months would be sufficient to satisfy all of the goals of sentencing. Such a sentence will certainly promote respect for the law and provide just punishment.

Additional factors listed in 18 U.S.C. § 3553(a)(2) are to "afford adequate deterrence from criminal conduct" and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(B) & (C). The first factor contemplates generally deterring the public from committing crimes similar in nature to those in which the defendant has engaged. The second focuses on deterring the defendant himself from committing future crimes. Shon submits that both general and specific deterrence have been adequately met in this case.

In the instant case, general deterrence has been satisfied. Shon has been charged with a federal crime and has entered a guilty plea. A federal felony conviction and a several year prison sentence combined with a period of supervised release will encourage the general public not to participate in similar crimes. A longer sentence is not needed to achieve general deterrence.

As to specific deterrence, the instant case has been a life-changing experience for Shon. He went from never having any interaction with the criminal justice system to being convicted of a federal felony for Hobbs Act robbery. Shon has learned a very serious lesson and is truly committed to not reoffending. It is respectfully submitted that the requested sentence is sufficient

10

to achieve specific deterrence. As noted by Probation, Shon "appears focused on his future and has reengaged with his faith." PSR at p. 25.

Finally, Title 18 U.S.C. § 3553(a)(6) describes "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Shon respectfully submits that he is not similarly situated to his co-defendant Pineda, who received a 66 month sentence. It was Pineda who armed himself with a real gun on the night of the attempted robbery. Shon had no idea that his co-defendant was armed with a real gun and of course, Shon himself was not armed with a firearm. We believe this separates Shon from Pineda to a substantial degree and supports Shon's requested sentence.

## IV.    CONCLUSION

For all the foregoing reasons, Shon Morgan respectfully requests that the Court impose a sentence that contemplates a variance from the Guidelines, a sentence of 36 months, with two years' supervised release.

Dated: October 26, 2023

Respectfully submitted,

/s/ Francis L. O'Reilly

Francis L. O'Reilly, Esq.
1735 Post Road, Suite 2C
Fairfield, CT 06824
Tell. 203-913-4608
Attflor@aol.com

*Attorney for defendant Shon Morgan*

11